All right, we'll proceed on to the next case, which has a similar issue. And Mr. Brignac, whenever you're ready, we'll hear from you. Thank you, Judge Niemeyer. And yeah, we can just jump right in to the specifics of Mr. Boggs' case. I am Eric Brignac for Trevor Boggs. And I agree with Heywood and with you, Judge Niemeyer, with you, Judge Heitens. The question here is whether Mr. Boggs would have pleaded guilty. And I think diving into our record, I think there are five reasons to show that the government cannot prove that he would have pled to an ACCA offense. He would have gone to trial. So first... Just before you get to that, because it may bear on your argument, the indictment in this case alleged three offenses, alleged that enhancement was going to take place. And it talked about three offenses as defined in Section 924E.  Does the indictment have to allege more? In other words, for instance, if it said instead of as defined in 924E, it said committed on three separate occasions. You could still argue that some other definitional thing, in other words, the idea that it's a violent felony. Do we require definitions of what's being alleged to be alleged in the indictments? It seems to me any person with the most basic understanding of the English language would know that if they were charged with three offenses as defined in Section 924E, you'd go look in 924E and say what's being charged. Yes. And Your Honor, I think, as Judge Heitens alluded to several times, our constructive amendment argument is harder than Mr. Brown's. I prefer not to use constructive amendment in the context of pleading guilty. But yes, and I would say that our indictment error argument is a harder lift than Mr. Brown. It was still a defective indictment. Different occasions was an element. That's why I'm questioning you. What was defective about it? You're saying instead of alluding specifically to 924E as definitional, you want the words incorporated. I want there needed to be an allegation and an admission by Mr. Boggs, which didn't exist, that they occurred on different occasions. That's what we learned from Erlinger. That's an element. But Your Honor, I mean, you can cite the statute, but it omits an element. 922G on its face always said what it said. But by not alleging that a defendant knew he had a felony status, that turned out to be right. I don't want to burn too much of your time on this. But and the answer, I suspect, is going to be the government forfeited forfeiture. But this all sounds like this all sounds like you think the indictment was defective. And it sounds like you run, unlike Mr. Brown, though, you had every reason to know the indictment was defective. And so have if the government has not forfeited forfeiture, which I think they quite plausibly have, if the government had asserted forfeiture here, it seems that your indictment challenge is obviously forfeited. And I would say, Your Honor, that at the Rule 11, at the Rule 11 proceeding, not the Rule 11, but a violation because I guess conceptually for me, there are there errors in the indictment, there are errors at Rule 11 and there are errors at trial. I'm just suggesting that to the extent you have an indictment claim, had the government not forfeited forfeiture, it strikes me that your indictment claim is obviously forfeited. And here's why I disagree with that, Your Honor. Whitfield, page 308, and we'll get to Whitfield, I guess, because here's why this isn't like what turned out to be a rehafe error where they they needed to allege he knew he was a felon and they didn't. They alleged a crime. They alleged it completed, for lack of a better word, plain vanilla 922 G to which we pleaded guilty. And I think that is a critical. But then they have the words that say allegations of prior convictions. They do. And I would say as a practical matter, and I know we have to can't always think practically, I think that's just boilerplate that's in all of our. No, but it's not a Mr. Well, two different districts, Your Honor, Eastern versus Western. But let me just this all goes away and the much harder question of the indictment error goes away. If the government cannot prove that we would, you know, government cannot prove we would have pleaded guilty anyway. And at Joint Append, you talk about what record is available. What record do we look at? Well, at the time of the plea, the PIA agrees that we look at the entire record. But we do. Although think about at the time at the time of the plea, Your Honor, which is the relevant point, PSR didn't exist. And if you look at Joint Appendix 102-103. But on the indictment, the indictment uses the words as defined. It doesn't just cite it as a support. It alleges it as defined. It uses those specific words. And my question is, isn't that enough for an indictment to provide notice and to prevent double jeopardy? I mean, that's really the standard we're looking at in a defective indictment. You're saying there's an omitted element. I don't know if there is. So I guess if Your Honor would indulge me, if we assume I believe the indictment's effective, defective. All right. But if I assume that if obviously if the indictment's fine, then that's it. But assume it is my question. Joint Appendix 102-103, we talk about we say, Your Honor, several of his convictions, many of his breaking and enterings, we tried, my office tried under North Carolina, raise the age legislation, which basically allows people to have their prior convictions fully expunged. And we attempted unsuccessfully because there were some outstanding restitution issues. We attempted, and that's right in the Joint Appendix 102-103, to make a lot of those go away. All that would have been left if we had been successful were the B&Es that occurred in 2018, all on the same day. So at the time of the plea, one of the things Mr. Boggs would have considered about whether to go to trial is the fact that some of these convictions would have gone away. It was unsuccessful. Assuming that's not the case, if we look at his record, he has. Isn't that the analysis that any defendant does when pleading guilty? Yes. He takes a chance. He pleads guilty for whatever strategic reason he selected. He and he gives up his right to challenge the allegation. But he didn't have the right, Your Honor, to a jury trial at the time on the occasion's different element. If he had, he would have for instance. The argument goes back to what I've asked in the earlier is that he was not told that the jury, as opposed to the judge, will decide one element of the enhancement. But the indictment alleges that the whole, I mean, the indictment puts all the elements before. He was not told and it wouldn't have been if we had said, Judge Dever, we'd like a jury trial on occasions different. Judge Dever would have said, that's not the law. You can't get that. So I ask you, the indictment charges violent felonies. Yes. That is not an element of the enhancement. Is it for the jury? That is not that. That is a question of law. Is that an error when they didn't tell, when they tell him that not the jury doesn't have to decide that for the judge? They, that is not an error because the judge still, you know, Almendares Torres is the law and the judge has the power to decide that. But if you look, so here's another reason we'd have gone to trial. Joint appendix, we were at 161 to 164, paragraphs 30, 31, 32, a group of breaking and enterings, all occurring over a span of about three months, all in Harnett County. Then he goes to jail. Then he goes to jail for a year in 2012. Then in 2018, another group of breaking and enterings, all on the same day, all in Pender County. So was there a, might not have won, but there was a very plausible jury argument that he would have been able to go to the jury and say, yeah, a plausible argument that Judge Dever did not buy, but say, Judge, these were two sprees. Your Honor, the ladies and gentlemen of the jury. You could have made that to the judge or the jury. The question is whether that information that, as opposed to the judge, he knew of the risks of his prior record and he had counsel. The question is, is the fact that now other occasions is decided by the jury as opposed to the judge, is would that have caused him to change his plea? Yes, it would have. Listen to what, listen to what we told the judge. Here we go. Joint appendix 8283. Wooden is a, quote, multifaceted, robust inquiry that suggests it does not matter how close a case may be or whether a court believes it's easy to determine the occasion's different element. There's no hard and fast rule under Wooden that these offenses were committed on different days or even different months that they are necessarily different occasions. That is a jury argument, Your Honor. That's in the record. That's the argument we would have made. So is liability on the offense. Yes, but I get the question guilty. The question is more not whether you had a good argument, but whether he would have pled guilty. That's why I respect your honor. I respectfully submit that whether we had a good argument is a huge factor in whether we plead guilty. We would have always and we did admit that he knew we had a felony and he knew we had a gun. We would have had a bifurcated trial. The Supreme Court said this can be bifurcated. So what's the downside of going to the jury and either admitting those elements, like literally pleading guilty to those first elements or stipulating to them? When they said they have a bifurcated trial, did they mean, I just literally don't know, do they mean you can plead guilty to everything? Can you do like a partial Erlinger plea? And Your Honor, if you don't know, I certainly don't know. I think it is to be, like district courts might have a counter to determine. But I think a practical, I think, Your Honor, a practical analogy is capital litigation where often someone will go to trial and they go to a full trial because they're trying to lay mitigation out. But they present, they don't really, they don't really plead. This, my practical guess is this may have been a case where we stipulated to the base 924G elements. And so that part of it would have been a jury trial. That part of the jury trial would have been about five minutes. And then it would have all been about the ACCA enhancement. But, you know, that means there's much less risk to the jury trial because we're getting right to the nub of it. And then the exposure, his guy, if he had gone to trial and won on this ACCA element, which, again, he might have had some convictions expunged by then. And even then he had a viable only two occasions argument. If that were the case, his exposure at the time was 63 to 78 months without ACCA. And then with ACCA, it's 180 at a minimum to life. And this is someone who'd only been in jail for a year before. So I think he really had every incentive to roll the dice here because of the draconian ACCA penalties and the very plausible jury argument that this was only two occasions. Can I skip to what I'll call the last harmless error argument in this case, which is the part where the judge said, even assuming I'm wrong about the ACCA, I'm going to give you the exact same sentence anyway. And your response to that, as I understand it, is, but that would affect like the maximum term of supervised release he's eligible for in the event that he's later held to have violated the terms of the supervised release. So first question, do you know any court that has adopted that theory of why an error is not harmless? I do not offhand, Your Honor, although it is a practical burden on Mr. Boggs, that has to be remedied now. If we waited until he was revoked, you know, that wouldn't be right. I mean, this court has multiple cases saying. Charles, we've said that whether he violates supervised release is within his own control and that he should not get credit in an argument that suggests that he's going to violate the law. Yeah, no, and I understand that. But I mean, there is the question is, we're already operating in a hypothetical world where Judge Devers says, look, even if your guidelines would have been 63 to 78 months, I was I'm going to have given you over 100 months over that, over double, you know, I guess not, yeah, over double your non-ACCA guidelines because we're in the hypothetical world now where he is not ACCA, which actually is not. But, you know, from Judge Devers perspective, I think you're ACCA. No, you're not. So Judge Devers says I'm going to more than double the top of your guideline. So just so we know, if this court agrees to us and we go back for a non-ACCA resentencing and Judge Devers does that, I strongly suspect that we're going to be bringing a substantively unreasonable upward variance. I mean, it's very easy for him to say I would have just given you 180, but justify over doubling the guidelines. So right there, I would say what he's doing is not this little, oh, yeah, it would have been the same sentence. It was a heavy lift. But this court doesn't really need to engage in that double hypothetical because I do think that, you know, having this maximum life sentence on him, it changes his exposure. And your honors, the government, as we point out in our, I think it was our first reply brief, government never responds to that argument. So I think they've actually waived any response to that argument. You know, they cite an unpublished case from this court that didn't address the question, but they never sort of grapple with that. Of course, I'm right. Not waive. Yes, your honor, again. So and I would, I have just about a minute left. So what, can I ask you a remedy question? What's the remedy you're seeking? So, your honor, I thought I just heard you say you're seeking resentencing, but why wouldn't the remedy be withdrawal of the plea? And I think, your honor, that I guess I would say the remedy is resentencing if this court were to agree that it was indictment error, you know, under Whitfield, I know your honor, say it's not a constructive amendment, but the indictment was so fundamentally defective. He pled to something with a max of 120. I just say the reason this, the reason this, if your honors, though, okay, I'm going to agree that the question is, would he have pled anyway, which I think is our strongest argument, then, yeah, I think we go back, we blow up the plea and we actually have this jury trial, which I really, this isn't, you know, we come up here, oh, we would have a jury trial, it's harmless or, you know, and then we go back and plead anyway. And everyone wonders how disingenuous I was being. I mean, I just laid out five reasons he would have gone. And again, this is this is someone who was, if he wins at the jury trial, the top of his guidelines are 78 months. And if he goes to trial and loses, you know, perhaps, you know, if he were to testify or something and Judge Devere were to find he was obstructing justice, you know, there there is some risk, but, you know, he's at 180 and he probably ends up at 180 whether he goes to trial or not. Yes, Judge Floyd. I just want to follow up on Judge Heiden's question, if he were to do it, is he going to go back from a trial and the whole thing or just the enhancement issues? May I answer, Judge Neumeier? Yes. Judge Floyd, I can't speak. I can't entirely predict our trial strategy, but my my guess is that the plea would be vindicated. We would go to trial and most likely stipulate to or at least not practically contest the knowing possession of a gun, knowing we had a felony. And we would contest the heck out of the occasions separate. Are you ever going to be able to plead guilty just to the underlying charge and then have a jury trial and enhance the issues? Can the government be forced to do that? And I don't know. I think that will be developed over the post Erlinger months and years. Well, you can't do it on drug quantity right now, right? If you're an 841 defendant, you're not allowed to say, I definitely admit that I definitely have drugs and I definitely admit all these things. I just want a jury trial limited to the question of how many drugs there were. And so I think the cleaner way to do this may be trials where things either practically aren't contested or are formally stipulated. I would also, if I may, just maybe Mr. Bragdon will have a sense if this court does vacate the plea. I suspect the government will supersede with an indictment that does that that fixes whatever indictment errors may be there. Thank you. And it still goes on trial. Your Honor, I mean, it will be his choice up until, you know, the day of trial. But I'm one of his lawyers and I would advise him to go to trial on occasions different because I think it's a winnable jury issue in his case. All right. Thank you, Mr. Mr. Bragdon. Good morning, may it please the court. I'm David Bragdon and I represent the United States. I want to hit a few different things. I do want in a minute to discuss some of the facts and the strength of the evidence. But before doing that, I would like to hit the legal standard that we consider here in harmless error. And also to the extent the court is interested, I do have some thoughts on both the grand jury and the Shepard documents issue. The court has been talking a lot and counsel has been talking a lot about whether or not he would have chosen to plead guilty. And as far as I can tell, based on my research, there have been eight circuits that have addressed harmless error in a guilty plea context. And none of them have applied that standard. Has any of them explained why they're doing this jury question? With no disrespect to anyone, it strikes me that in many of these Apprendi cases, like there's the jury issue, there's a jury Apprendi violation and they're like, oh, yeah, there's also this indictment problem. But the cases end up getting driven by the jury problem. Like Nader is an example like that. Like, like, and I think the follow on to Rahaf is one of those. Like, I agree with you. I've seen those cases. They say that. I don't see a single one of them explain why that's the right question. I don't either, Your Honor. However, I do have an explanation that I've thought about, at least, which is defendant here and defendant in these other cases did not ask to get out of their guilty plea. And I think that's a distinction that you have between Greer and these other cases. What they want is a resentencing. And I think when they want a resentencing, they want a resentencing without ACC status, it would be very odd to say in one set of circumstances, OK, we're going to consider whether you wouldn't have gone into trial. And the other set of circumstances, we're going to look at whether the evidence is uncontested or overwhelming. Those situations really at sentencing stage are exactly the same. And so to me, that is still the appropriate standard. What if the defendant says, I want to get out of my guilty plea? Then that's not this case. I think that could change the analysis. I think if defendant came. But isn't the analysis here whether he would have pled guilty? Well, defendant is not seeking to get out of their guilty plea. And so these other circuits that have applied it, even in the plea context, have looked at whether the evidence is uncontested and overwhelming. And that ends basically the guilt phase, the whole notion of Erlinger is that it is an element of an enhancement that has to be included in an indictment. And when you plead guilty to the indictment, if you're not aware of that, then you change your plea. But I must say, I had a lot of difficulty conceiving why we're going to sentencing, which presumes the guilty pleas in place. His argument is that he had a rule 11 dialogue and wasn't told that he could go to a jury on an element of the enhancement. He also contends that the indictment didn't include sufficient information to tell him that. Now, it seems to me the only relief he could claim on that is I want to plead guilty again. I want to have my guilty plea removed and consider whether I plead guilty to the indictment. And then as Judge Hyten says, at that point, the government's going to add a few words to instead of as defined by 924E, it's going to say three other occasions, on three different occasions. I don't know where we're going on this. He knew he was facing this. The question is, who is he challenging before? And the argument has to be based on his argument, I think, that if I had known I could go to a jury on the three different occasions issue, I would not have pled guilty. I do understand that way of looking at it. And I don't understand the other way. The only thing I'll say is the other courts that have considered this and other circuits have looked at it the other way. And I guess what I would say is... Well, that goes to the fundamental issue of Erlinger. In other words, it's a little bit different to take a sentencing enhancement based on recidivism and say a judge finds part of it and a jury finds another part of it. That's the Supreme Court's case. I understand it. And that's our law. But it does create complications because it basically increases the sentence, not based on the conduct charged, but on past conduct. And the Supreme Court has said because it increases the penalty, it goes to a jury. Well, a lot of other things increase the penalty also that don't go to the jury. But I'm not criticizing. I don't want to be criticizing. I'm saying it's making it complex. But I can't understand why we're focusing on the sentencing if the argument is he wasn't indicted correctly and he didn't understand the charges at his plea. I do agree that it's a guilt phase determination. And I won't belabor that difference because like my colleague in the U.S. Attorney's Office, I think we win under either standard. Whether the court analyzes whether this defendant would have pled guilty or whether it analyzes whether it was uncontested and overwhelming. And I think the key fact here is... Well, that uncontested may go into the analysis as to whether he would have pled guilty. And he's facing very clear, a very clear evidence. He could not make a good argument that a jury would give him a greater benefit than a judge finding those facts. If it's close, he might be able to make that argument. You know, jury's 12. Yeah, I think it absolutely does. And I think the biggest fact here is at no point in district court did the defendant say, my crimes did not occur on different occasions. They all occurred on the same occasion or you didn't prove three. That was never an argument. What he argued instead was this is a jury issue and it should have resolved by the jury, but he never... We're talking about a limited number of cases now because the government don't comply with it earlier in the future. Why should we change our analysis of harmless error to something else now when we're talking about a limited number of cases? And they were prepared to plead guilty to the underlying charge. They just didn't know about these other things. I'm just a little perplexed about what we're doing here. Thank you for that question, Your Honor. So let me just say, first of all, I guess I will say I don't think it's changing the analysis because I think this analysis comes from Liggins. I think it's consistent with Supreme Court cases like Greer that analyze substantial rights. But secondly, what I'll say is in this limited set of cases, there is no way to turn the clock back. Short of letting the defendant out of the plea, there's no way to turn the clock back to what would have happened beforehand. If we say, well, armed career criminal just can't apply because the government didn't charge it or prove it at the time because the law was different, well, then that's a situation that would not have occurred. And if we say... And so what the court says, the court has applied harmless error in these situations and they apply it. They recognize that this is a little bit of an infringement on the jury right, but that's why they set such a high standard. Beyond a reasonable doubt, and at least in the trial context, beyond a reasonable doubt means no rational jury would have decided it defendants way. And I think here where it's uncontested, the occasions occurred, the crimes occurred months first and then years apart for the between the kind of... I think of them as three sets of crimes. Set one, Harnett County. You have another set a few months away, also Harnett County. And then you have another set a few years away in a different county. I think there's not much question on the second and third set. But even between those first two sets, you have different victims. You have dates months apart and you have different things taken in the burglaries involved. And so it's not a close call. And recognizing it's not a close call, even in defendants opening brief, even in the reply brief, they didn't argue, hey, these were committed on the on the same occasions. It was the sir, sir reply where they first tried to make that argument. And so this is sort of like your forfeiture argument that doesn't show up until your sir reply brief. Um, well, so, yeah, I would say so. Now, to be fair, I will to split hairs a little bit. The grand jury argument that these weren't in the indictment, I think that shows up for the first time in the sir, sir reply brief. That was not raised in their initial brief or their reply brief. And so to the extent that this is a grand jury issue, I think that that we don't that that that's something that that was not raised. I will. I did want to briefly address the grand jury issue. And I just want to say that, um, uh, first of all, there are other circuits that have applied this harmless error, both in the context of the grand jury error and in particular Confredo from the Second Circuit, Pena from the Second Circuit and Harkely from the First Circuit. The second thing I will say is on the grand jury, but the sixth hasn't. Uh, I don't recall, I did not see that the Sixth Circuit case, at least the one that we cited in our 28-J letter, I don't I didn't see it addressing that. I may have missed it. The second thing that I'll say is, um, Leggins is a very close factual case of this. It's much closer, I think, than Whitfield. Um, and for a particular reason, when you talk about a constructive amendment to the indictment, you're talking about something that was changed from the indictment to presentation to the jury. And that's what happened in Whitfield. You had the judge giving an instruction that is different than what's in the indictment. Here, there is no jury. And so that difference does not exist. Um, and to the extent the court thinks, well, it doesn't really make sense to treat those, that, that factual difference differently. Um, I would say that the trend in Supreme Court cases is to find that substantial rights can be analyzed even where there is a problem in the indictment. Um, and I think Washington v. Requencia didn't directly, directly address this issue, but at least- Because the court literally says we're only talking about a jury error here. It did. It did. But that case, it was not charged in the indictment as well. Sure. But the court literally has a footnote that says we're not talking about any indictment problems. And then Greer is another example where it was not charged in the indictment. And, and sure, it's plain error, but the substantial rights analysis is the same kind of substantial rights analysis you analyze in harmless error. Except as your friend says, Cotton rather conspicuously gets to substantial rights and goes like, there's like a hard question here. But who cares? We're going to prong four, prong four, all, you know, defendant, we get to prong four and the defendant loses, right? Like Cotton, it'd be really helpful for you if Cotton had been resolved on prong three. But Cotton is very clearly resolved on prong four. But, but Greer was resolved on prong three.  And, and Greer would have, would have been a very different opinion if, if, if the grand, if the Supreme Court had said, hey, this substantial rights prong can't be analyzed under a prong three. It's automatically met, you know, and so that's a different opinion. And so my point is, when you have Liggins that directly supports our position, and it seems to be consistent with the modern trend of Supreme Court opinion, I don't think it makes sense to take another case, Whitfield, that doesn't directly address our situation and expand it and take it kind of beyond its immediate context. And so I would suggest that this court should follow Liggins. I think Liggins is not inconsistent with Greer. I think there's tension between the two, two approaches. But I think that tension, I think that the Liggins is much more consistent with modern Supreme Court jurisprudence than Whitfield is. And so I don't think it makes sense to adopt, to say, OK, we're going to essentially find that Liggins is foreclosed by Whitfield. I wanted to briefly address the Shepard documents argument. One of the things that defense counsel said in this case is that you should not, you can't look at Shepard's documents. And I would just say, you know, as a factual matter, what the Supreme Court said in Erlinger is, hey, these Shepard documents, they aren't so infallible as to avoid going to a jury. They're not that good. But it never says you can't use them. And I would imagine even in 922G trials, Shepard documents is exactly the sort of evidence the government often uses to prove the defendant knew he was a felon, which is an element we now have under under Rahei. And so those sorts of documents. The government uses those documents at trial. Tell me what we don't introduce PSR as a trial. Right. I agree, but this is an admissible form of evidence. And so, no, that seems like a really if I Shepard documents, you mean like judgment of conviction for the previous? Sure. Totally get how we do that. Transcript of guilty plea colloquy in your previous case. I get that. But the government doesn't get to admit PSRs before juries. Right. That's that's correct. Your Honor. Doesn't that seem like a pretty big and important distinction? I think it is. I think it is a distinction. And I'll chat. I'll talk about that a minute. And in our case, we did have Shepard documents. We weren't relying on the PSR here alone in the PSR part of the record. But the PSR is part of the record. And the court the court has said in Greer, didn't the court. Actually, the PSR is part of the record that absolutely your honor. And in fact, in Greer, the court specifically said, hey, when we're analyzing substantial rights, we're not limited to what what happened at trial. We're able to look at any part of the record. And and it's because we're analyzing this counterfactual. We're analyzing what would have happened had this been proven. And presumably the government would have presented this evidence that it had had it been proven. And so the court looked at the PSR. I think there's there there are other cases and certainly other circuits that have equally applied Shepard's documents and looked at those documents. And so I think I think that that in considering address just briefly what your views are as to whether there was an error in the indictment. So, your honor, I you alleged in the indictment, I'm probably asking the wrong person, but in the indictment, you alleged as defined by you said three three prior convictions as defined by. And then you gave the citation, which gives all the aspects of it. I would I hate to make any concession. I do think that we made an error in the indictment. And when we say as defined by the statute, I think what that meant is these are violent crimes within the meaning of how the statute applies violent crimes. It also defines in the same definition on three different occasions. It does. And so maybe it's not a violation. I think I see violent crimes is a long definition. It's two or three lines long. And the question is, do you have to put violent crimes and then put the statutory definition in? And you're saying that you don't have to put that in, but you have to put on three separate occasions, both of which are defining the qualifying act. I would certainly say the best practice is for us to allege that they occurred on different occasions. And in in other cases, the court has said sometimes a statutory reference is not enough to include. That's my point. You actually allege as defined by. And so it's not a citation to support it. It's a it's a definitional. You're instead of saying, put in the full definition of violent crimes and on three separate occasions, different occasions, and of course, three different occasions can be defined, too. I mean, then you have to start going into wooden and trying to distill something from wooden. I don't know how far. I'm a little surprised that you haven't rested more on that because it seems to me the requirements of an indictment, if you go back to the fundamental rule about what an indictment is for and the essence of an indictment, I've understood it. I haven't gone back and looked at this, that it's in your it's to provide notice and to prevent retrial on the same on something similar. In other words, to distinguish it from for double jeopardy purposes. And it seems to me that when you say three different crimes as defined by 924 E. May I may answer it about out of time, but that may be an argument that that we missed here. I'm not causing you to embarrass you. I think it could have been more clear. Certainly, maybe it was good enough the way it was phrased. But that's not that is not an argument we've made in our briefs here. As in the first case, I believe in this case, neither defendant contested the accuracy of the prior convictions. Is it necessary for us to go in this opinion and address the Shepard issue? So, I would say. In other words, would we be giving an advisory opinion? Maybe it's maybe it's not necessary. That's a good point. The defendant never did challenge the accuracy. It never challenged the defendant, never challenged the accuracy of the dates either. This one is also a little unusual because the Supreme Court does express some concern of, OK, a date could be wrong here. You have quite a few set. You have 12 separate convictions, many of them occurring on, you know, occurring on similar dates. And so multiple of them would have to be off for that to be a real argument in this case. If there's no further questions, I would ask the court to affirm in this case. Thank you, Mr. Brangham. Mr. Brangham. To get to your concern, Judge Niemeyer, about the indictment, you know, wait until oral argument rebuttal to look at the statute. But the indictment says, you know, violent felonies as defined in Section 924 E2B, that is the violent felony definition. E1 is the different occasions allegation. So I think as right on the face of the indictment, it does not allege different occasions. I also really want to get to, I want to, I think, correct something my colleague just said that we never contested that they were on different occasions. I mean, I read it once before. I won't read it again. Joint Appendix 8283. We said, I guess I will read it to a small degree. These offenses, you know, wouldn't says that just because they were committed on different days or even different months that they were necessarily different occasions. And then Judge Dever, then the government submitted Shepard documents. And Judge Dever at the sentencing went through the Shepard documents to say, you know, I see these addresses. I see these dates. I find there are different occasions. So it was totally contested. The error is that it was Judge Dever and not 12 honest people sitting and making that determination. And let's give up what now is starting to appear to me as a significant right remedy problem. So I just glanced at every brief you've submitted to this court. And every single one of these briefs ends by saying you should vacate and remand to give me the lower, better sentence. And not a single one of them ends with you should vacate and remand for resentencing. Why isn't that a real problem? Because I'll just say, I think it's transparently obvious the remedy here is to vacate the plea. It is not to give your client the better sentence. And, Your Honor, I think what happened here is, you know, we sort of had two cases. It's not like we all weren't aware of Rico Brown and Trevor Boggs. The Supreme Court kept deciding things. You know, it went up to the Supreme Court. Brown was GVR'd. This court initially remanded. And that's why you guys are paid so much. And so I guess as this has evolved, I was asking for my maximal remedy, which was he pleaded. He pleaded to a base 924C with a cap of 10 and he was sentenced to 15. And so my maximal remedy was give me the lower sentence. Lots of lawyers ask for alternative remedies. Yes. Well, and the government itself, Your Honor, in their briefing cited Haywood. So that was there. I was saying we deserve a better remedy than that. But I think inherent even in the government's briefing, which again cited Haywood, which I think is the case that controls. And look, if I had this to do all over again, I think I could have asked for that as an alternative remedy. But effectively, that's what the government was. Not even logical, because if the indictment was an error and the colloquy pleading guilty to the indictment was an error. That's where the error occurred. The error didn't occur in sentencing. It occurred in pleading guilty to when this should have gone to a jury. And so it seems to me the only remedy is to do over the Rule 11. I think you're right, Your Honor. I think as we have had this conversation and we've been here for a couple hours now, I think I have come to that position. The other one more thing I want to say, and I think this was so inherent we didn't really say it. The reason for a lot of these cases that defendants are going to choose to go to trial in these Erlinger cases is it's a rare instance where you're going to trial on your punishment. Normally, the question is you're charged with a crime. It has a punishment. Would you have pleaded guilty or not? Well, you would have lost acceptance of responsibility. There's aspects. Here, it's kind of like a bit of a have your cake and eat it, too, at least the way the Supreme Court's laid it out of, yeah, I'll plead guilty to the thing I'm obviously guilty of, but I'll take my chances to go to jail for 90 months instead of 180. And so I think this problem will go away, the harmless error. But, you know, I think there's going to be a lot of Erlinger ACCA trials. There's no question about it. It's going to cause the district courts, it's going to create a need for them to design some way and the attorneys to design some way to handle this. Bifurcation may be one way. I don't know if you can fracture a trial and go on part. You'd probably have to do the whole thing and just stipulate somehow. And then you have stipulation problems under the Constitution. You know, I think you're absolutely right. We're going to see you again and we're going to see Mr. Bregman again. And your honor, it's example number 327 of why I'm glad I'm not a trial attorney. And I think the court and we would ask to vacate. And I do think at this point, ask for the opportunity to have a proper rule 11 with the proper indictment. Thank you. All right. We're going to recess, take a short recess. Before then, we're going to come down and greet counsel. And if you would come up and allow Judge Floyd to greet you here too. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd